IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE

OSCAR VAZQUEZ MARCANO,

Debtor

CASE NO. 22-00289 (ESL)

CHAPTER 13

## OPINION AND ORDER

This case is before the court upon the *Chapter 13 Plan dated 10/22/2022* (Docket No. 59), which modifies the rights of secured creditor, the United States Department of Agriculture's Rural Housing Service (the "USDA"), pursuant to 11 U.S.C. § 1322(b)(2). Also pending before this Court are the following related motions: the USDA's *Objection* (Docket No. 28), the Debtor's *Reply* (Docket No. 42), the USDA's *Sur-Reply* (Docket No. 47), the Debtor's *Reply to Sur-Reply* (Docket No. 75), and the USDA's *Opposition to Reply to Sur-Reply* (Docket No. 76). For the reasons set forth below, the USDA's *Objection* (Docket No. 28) is sustained, and the confirmation is DENIED.

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(a) and (b). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

## FACTUAL AND PROCEDURAL BACKGROUND

1.      Prior to the Petition Date, on or about December 11, 1986, the USDA extended a credit facility to the Debtor in the principal amount of $39,500.00 (the "Loan").

2.      The Loan is secured by real property located in Alturas de Bucarabones, Toa Alta, Puerto Rico (the "Property"). See *Voluntary Mortgage No. 238,* Proof of Claim No. 4, p. 23.

3. The Property is guaranteed by *Voluntary Mortgage No. 238* executed on December 11, 1986, before Notary Public Miguel Bauzá Rolón, and a secured *Note* in the principal amount of $39,500.00, bearing interest of 9.5% per annum and a thirty-three (33) year maturity period from the date of execution, executed on the same date. See *Voluntary Mortgage No. 23*, Proof of Claim No. 4, pp. 10-26; *Note*, Proof of Claim No. 4, pp. 5-7.

4. The *Note* matures thirty-three (33) years from the date of its execution. See *Note*, Proof of Claim No. 4, p. 5.

5. On February 4, 2022, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code, Schedules, Statement of Current Monthly and Disposable Income Calculation, and Statement of Financial Affairs. See Docket No. 1.

6. This is the Debtor's fifth bankruptcy case. Debtor's first Chapter 13 petition was dismissed on February 13, 2022 (Bankr. Case No. 10-04195, Docket No. 65). Debtor's second Chapter 13 petition was dismissed on July 31, 2019 (Bankr. Case No. 17-04077, Docket No. 90); Debtor's third Chapter 13 petition was dismissed on June 11, 2013 (Bankr. Case No. 12-05478, Docket No. 66). Debtor's fourth Chapter 13 petition was dismissed on December 3, 2015 (Bankr. Case No. 14-08307, Docket No. 50).

7. On February 22, 2022, the USDA filed Proof of Claim No. 4 in the secured amount of $155,708.53, and pre-petition arrears of $125,618.43. See Proof of Claim No. 4. In each of the Debtor's previous bankruptcy cases, the USDA has filed secured proofs of claim.

8. On April 4, 2022, the Debtor filed Amended Schedule A/B, C, I and J. See Docket Nos. 20, 21, 22, 23.

9. On that same date, April 4, 2022, the Debtor filed a *Chapter 13 Plan dated 04/04/2022* (Docket No. 26) requesting the Court determine the value of the USDA's claim of "$155,709.00" as "$100,000.00", bearing no interest, with the remainder of such claim to "be

treated as an unsecured claim under Part 5 of this plan". Id., pp. 3-4, § 3.2.  In turn, Part 5 of the *Plan* proposes the following treatment for unsecured claims: "[a]llowed nonpriority unsecured claims that are not separately classified will be paid pro rata … [from] [t]he funds remaining after disbursements have been made to all other creditors provided for in this plan." Id., p. 4, § 5.1. Attached to the *Plan* is an *Appraisal of Real Property* (id., pp. 8-18) of the collateral recuring the FDCPA's lien, and attributing to such collateral a value of $100,000.00. See id., p. 11 ("After adjusts[sic] was made the sales shares a range in value from $100,000.00 to $103,400.00 with the most probable market value of $100,000.00 being indicated.").

10.     On April 5, 2022, the USDA filed a *Motion to Object Confirmation of Payment Plan* (the "*Objection*", Docket No. 28), averring that under 11 U.S.C. §§ 1123(b)(5) and 1322(b)(2) "cram downs are not permitted on mortgages for homes that serve as [a] primary residence", and thus "the proposed plan is unfeasible, and should not be confirmed." Id., p. 3, ¶¶ 4(c), 5.

11.     On June 10, 2022, the Debtor filed a *Reply to Objection to Confirmation Docket Number 28* (the "*Reply*", Docket No. 42), averring that: "[t]he Plan is feasible and is not speculative given the appraisal report supports [the] proposed lump sum payment … of $107,656.00[;] the property has sufficient value, that is $127,000.00, to support a refinance, or sale". Id., p. 1, ¶ 4.  The Debtor also avers that "the mortgage note is expired", "no contract is currently in place", the "property … is, in part, owne[d] by debtor's husband's heirs" and "DOES NOT involve a mortgage taken over debtor's principal residence", and thus an "exception to the general rule" —Section 1322(b)(2)'s anti-modification provision— exists. Id., p. 2, ¶¶ 5-8 (emphasis original). The Debtor cites caselaw in support of its contention that Section 1322(b)(2) is inapplicable.

12. On August 30, 2022, the USDA filed an *Opposition to Debtor's "Reply to Objection to Confirmation Docket 28"* (the "*Sur-Reply*", Docket No. 47), averring that the claim *is* secured by Debtor's principal residence, "Section 1322(c)(2) … does not entitle the debtor to neither cram down the claim, nor does it exempt the debtor from paying interests over the amounts owed. Instead, the claim …  may be paid throughout the duration of the plan" (id., p. 2, ¶ 3), and Proof of Clam No. 4 has not been objected to and is enforceable under Puerto Rico law.

13. On October 12, 2022, a hearing on confirmation was held. See *Order and Notice*, Docket No. 44. Among other things:

> The confirmation hearing [was] continued without a date. Issue with USDA is whether the debtor may modify an expired mortgage through a Ch.13 plan. **It is clarified that property over which USDA holds a lien is debtor's residence**. Debtor shall reply to USDA's opposition at Dkt. #47 within 30 days. USDA to respond within 30 days. Trustee may intervene as it deems appropriate. Debtor shall file evidence of being current ($900) within 14 days. Failure to comply, case may be dismissed.

*Minutes Contested Chapter 13 Confirmation Hearing*, Docket No. 48 (boldface added).

14. On October 22, 2022, the Debtor filed a *Chapter 13 Plan dated 10/22/2022* (Docket No. 59) decreasing the plan base by $996.00, and proposing the same treatment for the USDA's claim, that is, the bifurcation of Proof of Claim No. 4 and the modification of its interest rate to zero. See id., pp. 4-5, § 3.2, p. 7, § 8.4.

15. Also on October 22, 2022, the Debtor filed an amended Statement of Financial Affairs. See Docket No. 60.

16. On November 7, 2022, the Chapter 13 Trustee filed an unfavorable *Report of Confirmation* (Docket No. 73), averring that the Debtor has arrears in the amount of $1,800.00, *inter alia.*

17. On November 18, 2022, the Debtor filed a *Reply to "Opposition to Debtor's Reply to Objection to Confirmation Docket Number 28", Creditor's Docket Number 47* (the "*Reply to*

*Sur-Reply*", Docket No. 75), averring that Section 1322(c)(2) "allows a Debtor to provide a reasonable interest rate when the liability is based on an expired mortgage note" (id., p. 3, ¶ 10), and "[t]he same reasoning applies when considering a cramdown. If the rights may be modified, then a cramdown may be alleged given a modification of the mortgage note is allowed under section 1322 (c)(2)" (id., p. 3, ¶ 12).

18.     On December 16, 2022, the USDA filed an *Opposition to Debtor's Reply to "Objection to Confirmation Docket 28", Creditor's Docket Number 47* (the "*Opposition to Reply to Sur-Reply*", Docket No. 76), averring that "pursuant to Article 1170 of the Puerto Rico Civil Code, supra, the loan obligation cannot be deemed extinguished, nor is the debtor legally entitled to unilaterally release himself from the payment obligation. Furthermore, pursuant to paragraph 2 of Art. 1170, supra, the accessory obligation, which is the mortgage lien, cannot be deemed extinguished or avoided, because the principal obligation - that is, the obligation to pay the loan in full - has been breached" (id., p. 3, ¶ 6). The Debtor further avers that "when a mortgage note is payable at a definite time the 20-year statute of limitations shall begin at the time when the obligation becomes due and payable" (id., p. 4, ¶ 9), that is, "on the date the note reaches full maturity" (id., p. 5, ¶ 10).

### LEGAL ISSUES

The issues before the court are whether a debt that matured, not just prior to the conclusion of the plan, but prior to the filing of a petition for relief, falls within the purview of 11 U.S.C. § 1322(b)(2), (c)(2), and whether the modifications proposed in Debtor's plan, that is, the bifurcation of the claim and modification of its interest rate, are permissible modifications.

### POSITION OF THE PARTIES

I.     Debtor's Position

The Debtor avers that because "the mortgage note is expired", "no contract is currently in place", the "property … is, in part, owne[d] by debtor's husband's heirs" and the debt is not "over debtor's principal residence", the Loan may be modified under Section 1322(b)(2) (Docket No. 42, p. 2, ¶¶ 5-8 (emphasis original)). The Debtor avers that Section 1322(c)(2) "allows a Debtor to provide a reasonable interest rate when the liability is based on an expired mortgage note" (Docket No. 75, p. 3, ¶ 10).

II.     USDA's Position

The USDA avers that "Section 1322(c)(2) … does not entitle the debtor to neither cram down the claim, nor does it exempt the debtor from paying interests over the amounts owed. Instead, the claim …  may be paid throughout the duration of the plan" (Docket No. 47, p. 2, ¶ 3).

APPLICABLE LAW AND ANALYSIS

(A)     <u>Section 1322(b)(2) and (c)(2) of the Bankruptcy Code, and the Modification of a Debt Secured by Debtor's Principal Residence</u>

Section 1322(b)(2) of the Bankruptcy Code, coined the 'anti-modification provision', permits a debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence", subject to Section 1322(a) and (c).  11 U.S.C. § 1322(b)(2).

This provision, "allows modification of the rights of both secured and unsecured creditors, subject to special protection for creditors whose claims are secured only by a lien on the debtor's home." <u>Nobelman v. Am. Sav. Bank</u>, 508 U.S. 324, 327 (1993) (holding that § 1322(b)(2) prohibits debtors from utilizing § 506 to bifurcate an undersecured creditor's lien into secured and unsecured portions where the collateral serving as security is the debtor's principal residence). <u>See also</u> <u>In re Gray</u>, 2008 WL 5068849, at *2, 2008 Bankr. LEXIS 3748, at *5 (Bankr. D.P.R. 2008) ("Section 1322(b)(2) prohibits modification of claims secured by a debtor's principal residence.")

"While '[t]he term 'rights' is nowhere defined in the Bankruptcy Code,' the Supreme Court has held that it includes those rights that are 'bargained for by the mortgagor and the mortgagee' and enforceable under state law." Anderson v. Hancock, 820 F.3d 670, 673-74 (4th Cir. 2016), quoting Nobelman, 508 U.S. at 329. See also Dukes v. Suncoast Credit Union (In re Dukes), 909 F.3d 1306, 1321 (11th Cir. 2018), Nobelman, 508 U.S. 324, 329-330 ("A [secured] creditor's rights 'protected from modification by § 1322(b)(2)' are the rights under the original loan instruments as defined by state law."). Courts have accordingly interpreted the no-modification provision of Section 1322(b)(2) to prohibit any "fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note." In re Nosek, 544 F.3d 34, 45 (1st Cir. 2008), quoting Litton v. Wachovia Bank (In re Litton), 330 F.3d 636, 643 (4th Cir. 2003).

Notwithstanding, Section 1322(c)(2) carves out a rare exception to the anti-modification provision by stating that "in a case in which the *last payment* on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due *before the date on which the final payment under the plan is due*, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5)". 11 U.S.C. § 1322(c)(2). See also In re Gray, 2008 WL 5068849, at * 2, 2008 Bankr. LEXIS 3748, at *5 ("Section 1322(c)(2) creates an exception to modification if such claim becomes due (fully payable) before the date on which the final payment under the plan is due.").

Section 1322(c) "permits a debtor to cure defaults at any time during the term of the plan as long as cure is made prior to any foreclosure notwithstanding the anti-modification provision of § 1322(b)(2). Commonly in Chapter 13 cases, a debtor will seek to preserve their home by proposing a plan that 'cures' prepetition arrears over time while paying the

-7-

remaining mortgage debt with interest in accordance with its terms or within the life of the plan."

In re Materne, 640 B.R. 781, 794 (Bankr. D. Mass. 2022) (citations omitted).

Bankruptcy Courts have routinely held that Section 1322(c)(2) is applicable where a debt matures, not just prior to the conclusion of the plan, but prior to the filing of the case.  See e.g., In re Olmo-Claudio, 2017 WL 3835798, at *5, 2017 Bankr. LEXIS 2473, at *11 (Bankr. E.D.N.Y. 2017) (holding § 1322(c)(2) applies to cases where the loan matured pre-petition and any proposed modification must comply with § 1325(a)(5)); In re Ibarra, 235 B.R. 204 (Bankr. D.P.R. 1999) (same); Hurlburt v. Black (In re Hurlburt), 572 B.R. 160, 165 (Bankr. E.D.N.C. 2017) (holding § 1322(c)(2) applies to cases where the loan matured pre-petition); In re Draper, 2015 WL 7264669, at *3, 2015 Bankr. LEXIS 3915, *7-8 (Bankr. E.D. Va. 2015) (same); In re Sanders, 521 B.R. 739, 744 (Bankr. D. S.C. 2014) (same); In re Newberry, 2007 WL 2029312, at *2, 2007 Bankr. LEXIS 2351, at *4-5 (Bankr. D. Vt. 2007) (same) (collecting cases); In re Henning, 420 B.R. 773, 786 (Bankr. W.D. Tenn. 2009) ("mortgages which fully mature prior to a debtor's bankruptcy filing fall within the purview of § 1322(c)(2).") (colleting cases).

In the instant case, "[i]t [was] clarified that property over which USDA holds a lien is debtor's residence." Minutes Contested Chapter 13 Confirmation Hearing, Docket No. 48. It is also undisputed that the Loan matured prior to the Petition Date and is secured by the debtors' principal residence. See Note, Proof of Claim No. 4, p. 5 (matures thirty-three (33) years from the date of execution); Debtor's Reply, Docket No. 42,  p. 2, ¶ 5 ("the mortgage note is expired"); the USDA's Opposition to Reply to Sur-Reply", Docket No. 76, pp. 2-3 ("the loan obligation in question became due in full on January 3, 2020, because the mortgage Note subscribed on January 11, 1987, established a 33-year maturity period from the date of the signing of the Note."). Thus, Section 1322(b)(2) and (c)(2) are applicable, and any proposed modification must comply with Section 1325(a)(5).

The question is therefore whether the modifications to Proof of Claim No. 4 proposed in the *Chapter 13 Plan dated 10/22/2022* (Docket No. 59), that is, the bifurcation of Proof of Claim No. 4 into secured and unsecured portions, and the modification of the Loan's applicable interest rate of 9.5% per annum to zero (Docket No. 26, pp. 3-4, § 3.2, p. 4, § 5.1, p. 11; Docket No. 59, pp. 4-5, § 3.2, p. 7, § 8.4), are permissible under 11 U.S.C. § 1322(b)(2), (c)(2). The Court finds that they are not. Bifurcation and the modification of the mortgage interest rate is an impermissible modification and a violation of Section 1322(b)(2).

(B)     Compliance with Section 132(a)(5) of the Bankruptcy Code

Section 1325(a)(5) directs that "the court *shall* confirm a plan if" one of the following three requirements are satisfied:

> (5) with respect to each allowed secured claim provided for by the plan—
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that--
>> (I) the holder of such claim retain the lien securing such claim until the earlier of—
>>> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>>> (bb) discharge under section 1328; and
>> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
> (iii) if—
>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; *or*
> (C) the debtor surrenders the property securing such claim to such holder;

11 U.S.C § 1325(a)(5) (italics added).

The USDA has not consented to or otherwise accepted the treatment proposed, and the Debtor has not proposed to surrender the Property to the USDA. As such, Section

1325(a)(5)(A) and 1325(a)(5)(C) are not satisfied, and the Debtor must meet the requirements of Section 1325(a)(5)(B) to confirm the chapter 13 plan. That is, payments must be periodic (in equal monthly amounts), and not less than the allowed amount of the claim. The treatment proposed for the USDA in the Debtor's *Chapter 13 Plan dated 10/22/2022* (Docket No. 59) calls for a lump sum payment for less than the amount claimed in Proof of Claim No. 4, which does not comply with or satisfy Section 1325(a)(5)(B). See Debtor's *Reply*, Docket No. 42, p. 1, ¶ 4 ("the appraisal report supports [the] proposed lump sum payment … of $107,656.00"); In re Materne, 640 B.R. at 807 (concluding, *inter alia*, that a lump-sum payment is in contravention of § 1325(a)(5)(B)(iii)); Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel, & Adam M. Goodman, Chapter 13 Practice & Procedure § 5:18 (2022) ("The plain meaning of 'periodic payments' is regular and recurring payments that are made to reduce a secured claim during the plan's term … A regular installment payment or payment of interest on the debt is a 'periodic' one, whereas a lump sum payment is not… [T]his interpretation of 'periodic payments' accomplishes the primary objective of … § 1325(a)(5)(B)(iii)…").

## CONCLUSION

For the reasons stated herein, the USDA's *Objection* (Docket No. 28) is sustained, and confirmation of the *Chapter 13 Plan dated 10/22/2022* (Docket No. 59) is DENIED for failure to comply with or satisfy 11 U.S.C. §§ 1322(b)(2)(c)(2), 1325(a)(5). The provisions of PR LBR 3015-3(g) shall apply.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of February 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge

-10-